UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

CARL HALL,                             :

                    Petitioner,        :       10 Civ. 58 (JSR)(HBP)

      -against-                        :       REPORT AND
                                               RECOMMENDATION
                                       :

UNITED STATES OF AMERICA,              :

                    Respondent.        :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction

          Carl Hall, by his pro se petition, moves pursuant to 28

U.S.C. § 2255 to vacate, set aside or correct his sentence.

Petitioner pled guilty to one count of racketeering in violation

of 18 U.S.C. § 1962(c) and to one count of conspiracy to distrib-

ute a controlled substance in violation of 21 U.S.C. § 846.  Hall

was sentenced to forty years of imprisonment and is currently

incarcerated pursuant to that judgment.  Petitioner claims that

his sentence should be vacated or modified because he was denied

the effective assistance of counsel, his guilty plea was not

voluntary and knowing, his conviction was the result of coercion, his conviction was the result of entrapment, his sentence was improperly calculated under the United States Sentencing Guide-lines (the "Sentencing Guidelines"), and there were general problems with his sentencing.

For the reasons set forth below, I respectfully recom-mend that the petition be denied in all respects.

II.  <u>Facts</u>

Petitioner was arrested on January 10, 2000 for con-spiracy to distribute heroin in violation of 21 U.S.C. § 846 (Ex. F to Memorandum of Law of the United States of America in Opposi-tion to Petitioner Carl Hall's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence ("Resp't Mem.") at 5).  Immediately after his arrest, he was represented by Anthony Ricco, Esq. (Ex. F to Resp't Mem. at 5).  On May 5, 2000, the Honorable Jed S. Rakoff, United States District Judge, granted Mr. Ricco's motion to withdraw because of a potential conflict of interest and appointed Barry Fallick, Esq. as peti-tioner's counsel (Ex. F to Resp't Mem. at 5).

Staring on May 18, 2000, and continuing through July 2, 2000, petitioner, represented by Mr. Fallick, participated in several proffer sessions with the government, during which he

provided information about the operation of a violent drug gang -
- the Young Guns -- and admitted to his involvement in four
murders (Ex. J to Resp't Mem. at 5).  As a result of these
sessions, on July 7, 2000, petitioner entered into a cooperation
agreement (the "Cooperation Agreement") with the United States
Attorney's Office for the Southern District of New York (Ex. A to
Resp't Mem.).  The Cooperation Agreement provided that in ex-
change for petitioner's "substantial assistance in an investiga-
tion or prosecution" and full and truthful cooperation, the
government would file a motion pursuant to Section 5K1.1 of the
Sentencing Guidelines and Section 3553 of Title 18 of the United
State Code for a sentence reduction.  The agreement also provided
that petitioner "shall commit no further crimes whatsoever" (Ex.
A to Resp't Mem. at 2).  It further provided that if the United
States Attorney's Office determined "either that Carl Hall has
not provided substantial assistance in an investigation or
prosecution, or that Carl Hall has violated any provision of this
Agreement, such a determination will release [the United States
Attorney's] Office from any obligation to file a motion pursuant
to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. §
3553(e)" (Ex. A to Resp't Mem. at 4).

      Pursuant to the Cooperation Agreement, petitioner
agreed to plead guilty to a two-count information, which charged

3

that:  (1) in violation of 18 U.S.C. § 1962(c), petitioner conducted the affairs of an enterprise through a pattern of racketeering activity based on his involvement with the Young Guns, and (2) in violation of 21 U.S.C. § 846, petitioner con-spired to distribute crack cocaine, powder cocaine and heroin (Ex. F to Resp't Mem. at 4).  Each charge carried a maximum sentence of life imprisonment (Ex. F to Resp't Mem. at 4).

Petitioner entered his guilty plea before the Honorable Judge James C. Francis IV, United States Magistrate Judge, on July 7, 2000 (Ex. B to Resp't Mem.).  At the plea allocution, Judge Francis placed petitioner under oath, asked him about his background and confirmed that he was in good health, was not under the care of a doctor or psychiatrist, and was not under the influence of any medication or other substance that would affect his ability to understand the proceedings (Ex. B to Resp't Mem. at 4-5).  Judge Francis asked petitioner whether he had reviewed the information with his lawyer, Mr. Fallick, and whether he was satisfied with Mr. Fallick's representation and advice, and petitioner responded affirmatively to both questions (Ex. B to Resp't Mem. at 5).  Judge Francis informed petitioner of the nature of the charges against him and their maximum sentences and petitioner indicated that he understood those penalties (Ex. B to Resp't Mem. at 5-6).  In response to further questions, peti-

tioner indicated that he understood the rights he would have at trial and the consequences of his guilty plea (Ex. B to Resp't Mem. at 6-9).  He confirmed that he had read, understood and signed the Cooperation Agreement (Ex. B to Resp't Mem. at 9-10). In response to questioning, petitioner admitted the essential elements of the two charges (Ex. B to Resp't Mem. at 10-16). Judge Francis accepted petitioner's guilty plea, finding that it was voluntary and knowing and had a factual basis (Ex. B to Resp't Mem. at 16).  Judge Rakoff subsequently accepted peti- tioner's guilty plea (see Docket Sheet in 00 Cr. 103 (JSR) (S.D.N.Y.)).

In August 2000, the government informed petitioner that it would not be filing a 5K1.1 Motion because he had violated the Cooperation Agreement by (1) committing a crime as a result of his placing calls from the Metropolitan Detention Center (the "MDC") to family and friends directing them to burglarize the apartment of his former girlfriend, Chavon Plange, and to take $45,000 in cash and other property that he had left there, and (2) lying to the government about his assets, including the $45,000, during the proffer sessions and on his financial affida- vit for court-appointed counsel (Ex. F to Resp't Mem. at 6).

Petitioner, through his new counsel David Stern, Esq.[1] moved to enforce the Cooperation Agreement and filed a brief in support of that motion (Ex. F to Resp't Mem. at 6 and Ex. C to Resp't Mem. at 4).

In advance of petitioner's sentencing, the Probation Department prepared a Presentence Report ("PSR"), which calculated petitioner's offense level as forty-six and his criminal history as Category VI (Ex. F to Resp't Mem. at 7).  This combination resulted in a recommended sentence of life imprisonment under the Sentencing Guidelines (Ex. F to Resp't Mem. at 7).

Petitioner's sentencing hearing commenced on January 14, 2002; petitioner's counsel argued that the government had misinterpreted the nature of petitioner's phone calls and had not acted in good faith in concluding that petitioner had violated the Cooperation Agreement (Ex. C to Resp't Mem. at 4-5, 12-16). Nonetheless, Judge Rakoff found that "any reasonable government official reading and listening to [the] tapes [of petitioner's telephone calls from the MDC] could reasonably come to the conclusion that the defendant breached his agreement because of the evidence of the defendant's involvement in the burglarizing and/or threatening of Ms. Plange" (Ex. C to Resp't Mem. at 18).

_____

[1]Mr. Stern replaced Mr. Fallick as petitioner's counsel on October 24, 2001 (Ex. F to Resp't Mem. at 7).

With respect to petitioner's statements concerning his
assets, Judge Rakoff held a <u>Fatico</u> hearing on March 4, 2002 (Ex.
D to Resp't Mem.).  Petitioner and the police officer who pro-
cessed petitioner during his arrest and attended the proffer
sessions, testified about the questions that were asked of
petitioner about his financial assets during the course of his
prosecution.  Petitioner's counsel, Mr. Stern, thoroughly exam-
ined both witnesses (Ex. D to Resp't Mem. at 15-29, 30-35, 44-
50).  Mr. Stern argued that petitioner had never made a false
statement about his financial assets because he was never di-
rectly asked about them and that the government had acted in bad
faith in concluding that petitioner had violated the Cooperation
Agreement (Ex. D to Resp't Mem. at 60-63, 66-67).  Judge Rakoff,
however, found that "the government did act in good faith in
concluding that Mr. Hall lied in not revealing his ownership or
claims to ownership of the monies in question" (Ex. D to Resp't
Mem. at 66).

Petitioner's sentencing proceedings concluded on March
7, 2002 (Ex. E to Resp't Mem. at 2).  Mr. Stern did not object to
the PSR at that time.  Consistent with the PSR's Guideline
calculation, Judge Rakoff sentenced petitioner to life imprison-
ment followed by five years of supervised release and imposed a
mandatory assessment of $150 (Ex. E to Resp't Mem. at 22).

Petitioner appealed from his conviction and sentence (Ex. F to Resp't Mem. at 7).  On March 14, 2004, the United States Court of Appeals for the Second Circuit affirmed petitioner's conviction, but remanded for resentencing in accordance with United States v. Booker, 543 U.S. 220 (2005) and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) (Ex. F to Resp't Mem. at 4).

Petitioner's new counsel, Gary Becker, Esq.,[2] submitted a sentencing memorandum which urged Judge Rakoff to consider the factors under 18 U.S.C. § 3553(a) and to impose a sentence substantially lower than life imprisonment (Ex. F to Resp't Mem. at 8).  Mr. Becker argued that petitioner's young age, personal history, his efforts to improve himself while incarcerated and his co-defendant's 30-month sentence all warranted a sentence substantially below the applicable Sentencing Guidelines range (Ex. F to Resp't Mem. at 8).  He also challenged the PSR's calculation of forty-six as an offense level, arguing that the PSR had improperly applied the Sentencing Guidelines' grouping rules, which resulted in holding petitioner responsible for a large quantity of drugs in connection with the drug conspiracy

---

[2]Mr. Stern was relieved as petitioner's counsel on February 23, 2004, and Mr. Becker was appointed as petitioner's counsel on June 7, 2005 (Ex. F to Resp't Mem. at 8).

8

charge even though petitioner had not admitted to a specific amount at his plea allocution (Ex. F to Resp't Mem. at 8).  The government conceded the error and Judge Rakoff applied only a two-level, rather than three-level, increase under the grouping rules (Ex. F to Resp't Mem. at 8).  Finally, Mr. Becker argued that petitioner was entitled to a three-level decrease under Section 3E1.1 of the Sentencing Guidelines to account for his acceptance of responsibility.  Judge Rakoff, however, found that petitioner was entitled to only a one-level decrease.

In sum, petitioner's offense level was reduced from forty-six to forty-four (Ex. F to Resp't Mem. at 8).  Though the Sentencing Guidelines' advisory sentence was still life imprisonment, Judge Rakoff sentenced petitioner to forty years of imprisonment and five years of supervised release (Ex. F to Resp't Mem. at 9).

On December 8, 2005, petitioner, through counsel, appealed his modified sentence (Ex. F to Resp't Mem. at 9).  Mr. Becker filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) on petitioner's behalf (Ex. F to Resp't Mem.).  The only potential issue on appeal was whether petitioner's sentence was unreasonable in light of the factors set out in 18 U.S.C. § 3553(a), and the Anders brief noted that there was no non-frivolous argument that could be made because petitioner's sentence

9

was substantially below the Sentencing Guidelines' advisory
sentence (Ex. F to Resp't Mem. at 9-10).  The Second Circuit
affirmed the sentence, but remanded to Judge Rakoff to provide a
written statement of the reasons for imposing a non-Guidelines
Sentence.  United States v. Hall, 499 F.3d 152, 153 (2d Cir.
2007) (per curiam).

On July 29, 2008, the Second Circuit granted both Mr.
Becker's motion to withdraw pursuant to Anders and the govern-
ment's motion for summary affirmance and denied petitioner's
request for appointment of counsel (Docket Sheet in 00 Cr. 103
(JSR) (S.D.N.Y.), No. 61).  The mandate issued on September 10,
2008 (Docket Sheet in 00 Cr. 103 (JSR) (S.D.N.Y.), No. 61).

On or about May 15, 2009, petitioner filed a motion
before Judge Rakoff seeking the appointment of counsel and
modification of his sentence.  Judge Rakoff denied both motions
on July 6, 2009, and held that no further reduction of peti-
tioner's sentence was appropriate "in light of the defendant's
extensive criminal history and the serious nature of the underly-
ing crimes, which included murder"  (Docket Sheet in 00 Cr. 103
(JSR) (S.D.N.Y.), No. 63).  Petitioner moved for reconsideration
and for an evidentiary hearing, but Judge Rakoff denied both
motions on August 27, 2008 (Docket Sheet in 00 Cr. 103 (JSR)
(S.D.N.Y.), No. 68).

10

B.   <u>The Instant Petition</u>

Petitioner filed the present petition under 28 U.S.C. §
2255 seeking to vacate, set aside or correct his sentence.  He
has raised six grounds for relief:  (1) he was denied the effect-
ive assistance of counsel; (2) his guilty plea was not voluntary
and knowing; (3) his conviction was the result of coercion; (4)
his conviction was the result of entrapment; (5) his sentence was
improperly calculated; and (6) there were general problems with
his sentencing.

On March 6, 2011, petitioner submitted a letter to this
Court stating that he had fully complied with the Cooperation
Agreement and that he was seeking a sentence of 188 to 235
months.  On October 14, 2011, this Court received additional
correspondence from petitioner purporting to amend his Section
2255 petition and laid out his own calculation of his offense
level under the Sentencing Guidelines.

III.   <u>Analysis</u>

A.   Petitions Under
<u>28 U.S.C. § 2255</u>

A prisoner in federal custody may move a court to
vacate, set aside or correct his sentence only "upon the ground

11

that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without juris-diction to impose such a sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'"  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010), quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by, Mickens v. Taylor, 535 U.S. 162 (2002).

B.  Ineffective Assistance
    of Counsel Claim

    1.  Applicable Law

    In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in Strickland v. Washington, 466 U.S. 668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

. . .

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components.  First, the defendant must
> show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose
> result is unreliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction . . .
> resulted from a breakdown in the adversary process that
> renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel-Guerrero v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In determining whether counsel's performance was objectively deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).  Because the test is conjunctive, a habeas petitioner's

13

failure to satisfy either prong requires that the challenge to the conviction be rejected.  Strickland v. Washington, supra, 466 U.S. at 697.

The Sixth Amendment right to the effective assistance of counsel extends to the plea bargaining process.  Lafler v. Cooper, --- U.S. ---, ---, 132 S. Ct. 1376, 1384 (2012); Missouri v. Frye, --- U.S. ---, ---, 132 S. Ct. 1399, 1405 (2012).  With respect "to the second prong of Strickland in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial."  United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005), citing Hill v. Lockhart, 474 U.S. 52, 59 (1985).  To meet this standard, far more than a petitioner's self-serving statement that he would not have pled guilty had he received other advice is required.

> In considering an ineffective counsel claim [aris-ing out of a petitioner's decision to plead guilty], a court need not accept a petitioner's uncorroborated, self-serving testimony as true.  Slevin v. United States, 71 F. Supp. 2d 348, 356 n.7 (S.D.N.Y. 1999), aff'd, 234 F.3d 1263 (2d Cir. 2000); see also Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973); United States v. Follette, 416 F.2d 156, 163-64 (2d Cir. 1969).  In the Second Circuit, it is established that the failure of the petitioner to submit an affida-vit from counsel corroborating an ineffective assis-tance of counsel claim provides sufficient justifica-tion to dismiss a petition to vacate a guilty plea. See, e.g., United States v. Santelises, 476 F.2d 787, 790 n.3 (2d Cir. 1973); United States v. Welton, 493

14

F.2d 824, 826 (2d Cir. 1971); <u>Slevin</u>, 71 F. Supp. 2d at 357.

<u>Grullon v. United States</u>, 99 Civ. 1877 (JFK), 2004 WL 1900340 at *6 (S.D.N.Y. Aug. 24, 2004) (Keenan, D.J.); <u>see also</u> <u>United States v. Gordon</u>, 156 F.3d 376, 380-81 (2d Cir. 1998) (<u>Strickland</u>'s "but for" test requires "some further 'objective evidence'" beyond a petitioner's "self-serving, post-conviction testimony."); <u>Potter v. Green</u>, 04-CV-1343, 2009 WL 2242342 at *15 (E.D.N.Y. July 24, 2009) ("Petitioner's only evidence showing that 'but for' counsel's error, Petitioner would not have pled guilty is Petitioner's affidavit; however this statement alone is insufficient."). Stated differently, the "petitioner shoulders the burden 'to convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" <u>Matos v. United States</u>, 99 Cr. 137 (WHP), 2012 WL 560360 at *3 (S.D.N.Y. Feb. 16, 2012) (Pauley, D.J.), <u>quoting</u> <u>Padilla v. Kentucky</u>, --- U.S. ---, ---, 130 S.Ct. 1473, 1485 (2010).

> 2.  Petitioner Received
>     <u>Effective Assistance of Counsel</u>

> a.  <u>Mr. Ricco's Representation</u>

With respect to Mr. Ricco, petitioner has made no showing that his performance was deficient. Mr. Ricco promptly

15

informed the court of his potential conflict of interest and
timely withdrew from the case.  His conflict could not have
adversely affected his performance because his representation was
of a limited duration, and, most importantly, it ended before any
significant events, such as the decisions to enter into a proffer
agreement or the Cooperation Agreement, were made.  See United
States v. Chen, S4 06 Cr. 457 (DC), 11 Civ. 995 (DC), 2012 WL
1583610 at *2 (S.D.N.Y. May 4, 2012) (Chin, C.J., sitting by
designation) ("An 'actual conflict' with respect to ineffective
assistance of counsel is one that 'adversely affects counsel's
performance.'" quoting Mickens v. Taylor, 535 U.S. 162, 172 n.5
(2002)).  Because Mr. Ricco's representation ended before any
critical events relevant to his guilty plea or sentencing oc-
curred, petitioner cannot demonstrate that Mr. Ricco's potential
conflict of interest and subsequent withdrawal prejudiced him.
Thus, he has failed to show ineffective assistance of counsel
with respect to Mr. Ricco.

        b.  Mr. Fallick's Represenation

        Petitioner has not shown that Mr. Fallick, who repre-
sented him through his proffer sessions, the Cooperation Agree-
ment and plea allocution, provided ineffective assistance of
counsel.  Petitioner contends that Mr. Fallick gave him "mislead-

ing information and unguided representation" and that Mr. Fallick knew about his calls regarding Ms. Plange, but only told petitioner not to worry about it and to stop calling.  These general and vague assertions, however, are insufficient to demonstrate that Mr. Fallick's counsel was deficient.  <u>See</u> <u>Paez v. United States</u>, 11 CV 2688 (HB), 08 CR 0823-03 (HB), 2012 WL 1574826 at *3 (S.D.N.Y. May 3, 2012) (Baer, D.J.) (denying habeas relief to a petitioner who only offered "no facts to support his conclusory assertions of ineffective assistance during the plea process").  The record reflects that Mr. Fallick's counsel was reasonable. Proceeding with the proffer sessions and the Cooperation Agreement was a sound strategy because it was a way to avoid the sentences of life imprisonment petitioner would have faced if convicted at trial.  In addition, Mr. Fallick's advice to petitioner to not make any more telephone calls regarding Ms. Plange was unquestionably correct, particularly in light of the fact that it was these calls that led to the government's decision not to file a 5K1.1 Motion.  Petitioner also has not identified any way in which he was prejudiced by Mr. Fallick's representation. The only identifiable prejudice petitioner may have suffered is that the government did not file a 5K1.1 Motion, but this is attributable to petitioner's own actions, and not Mr. Fallick's representation.  Petitioner makes no claim that Mr. Fallick

17

advised him that the calls to Ms. Plange were not a problem or would not have any consequences.  Finally, the Cooperation Agreement that petitioner signed and understood expressly warned petitioner that the government would be relieved of its obligation to make a 5K1.1 motion if petitioner violated the Cooperation Agreement, but that such an eventuality would not entitle petitioner to withdraw his guilty plea.[3]  Thus, petitioner has failed to demonstrate ineffective assistance of counsel by Mr. Fallick.

### c.  Mr. Stern's Represenation

Petitioner claims Mr. Stern's assistance was ineffective because Mr. Stern did not object to the PSR and did not

_____

[3]The Cooperation Agreement provides, in pertinent part, as follows:

> It is understood that, should this Office determine either that Carl Hall has not provided substantial assistance in an investigation or prosecution, or that Carl Hall has violated any provision of this Agreement, such determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle Carl Hall to withdraw his guilty plea once it has been entered.

(Ex. A to Resp't Mem. at 4)  At his plea allocution, Hall testified, under oath, that he had read, understood and signed the plea agreement (Ex. B to Resp't Mem. at 9-10).

18

argue that petitioner should receive a three point reduction for acceptance of responsibility (Pet. at 12).  Mr. Stern's representation, however, was reasonable.  During petitioner's initial sentencing proceedings, he filed a brief and strongly advocated for the enforcement of the Cooperation Agreement, arguing both that the government had misinterpreted the nature of petitioner's telephone calls and that petitioner was never directly asked about his financial assets.  Mr. Stern also filed an appeal of petitioner's sentence and conviction.  This course of performance cannot be said to be objectively deficient.  Moreover, petitioner suffered no prejudice because his objections to Mr. Stern's performance were ultimately addressed at his resentencing when his offense level was adjusted downward to remedy the error in the application of the Sentencing Guidelines' grouping rules and to account for petitioner's acceptance of responsibility.  Thus, petitioner's claim as to Mr. Stern is meritless.

### d.  Mr. Becker's Representation

Finally, petitioner's ineffective assistance of counsel claim as to Mr. Becker, who represented him during his resentencing and on his second appeal, is similarly without merit.  Petitioner contends that Mr. Becker violated his rights under the First and Fifth Amendments, sent mail to the wrong

address, failed to file any motions and failed to make a statute

of limitations argument (Pet. at 5 and 12).  These vague asser-

tions of deficiency are contradicted by the record which estab-

lishes that Mr. Becker reasonably represented petitioner:  (1) he

submitted a sentencing memorandum which urged Judge Rakoff to

consider all the factors in 18 U.S.C. § 3553(a); (2) he persuaded

Judge Rakoff to apply a one level reduction for acceptance of

responsibility; and (3) he successfully secured a one level

reduction to correct the PSR's improper application of the

Sentencing Guidelines' grouping rules.  These efforts, which

resulted in petitioner's below-Guidelines sentence of forty-

years' imprisonment, were objectively reasonable.  Mr. Becker

also, at petitioner's request, filed a notice of appeal, notwith-

standing his position in the Anders brief that there was no non-

frivolous issue on appeal.  Finally, petitioner has not identi-

fied any way in which Mr. Becker's actions prejudiced him,

particularly in light of the fact that petitioner received a

below-Guidelines sentence.  See Paez v. United States, supra,

2012 WL 1574826 at *4 (petitioner suffered no prejudice where his

sentence departed significantly from the minimum applicable

Sentencing Guidelines range).

20

Because petitioner has failed to demonstrate how any of his counsel provided ineffective assistance, his first claim provides no basis for habeas relief.

C.    Voluntariness of Guilty Plea

1.    Applicable Law

"Where, as here, the movant pled guilty, the inquiry on collateral review is 'ordinarily confined to whether the underlying plea was both counseled and voluntary.'"  Acevedo v. United States, 07 Cr. 378 (SHS), 10 Civ. 5544 (SHS), 2012 WL 3764544 at *4 (S.D.N.Y. Aug. 30, 2012) (Stein, D.J.), quoting United States v. Broce, 488 U.S. 563, 569 (1989); accord Triestman v. United States, 124 F.3d 361, 367 n.6 (2d Cir. 1997) ("[A] guilty plea cannot ordinarily be collaterally attacked, since it is considered an admission of all of the elements of the crime.").  In other words, habeas review is limited to whether the process by which the petitioner entered a plea was constitutional.  Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008).

Thus, "[t]o raise a claim despite a guilty plea . . . , the petitioner must show that the plea agreement was not knowing and voluntary."  Parisi v. United States, supra, 529 F.3d at 138. A plea of guilty is valid if it is "a voluntary and intelligent

choice among the alternative courses of action open to the
defendant." United States v. Renaud, 999 F.2d 622, 624 (2d Cir.
1993) (internal citations and quotation marks omitted).  "[A]
plea does not qualify as intelligent unless a criminal defendant
first receives 'real notice of the true nature of the charges
against him.'" Bousley v. United States, 523 U.S. 614, 618
(1998), quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941).  A
guilty plea is voluntary "if it is not the product of actual or
threatened physical harm, mental coercion overbearing the defend-
ant's will, or the defendant's sheer inability to weigh his
options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d
Cir. 1988), citing Brady v. United States, 397 U.S. 742, 750
(1970); accord United States v. Doe, 537 F.3d 204, 211 (2d Cir.
2008).

    "Ineffective assistance of counsel during plea
negotiations can invalidate a guilty plea and make granting
withdrawal appropriate, to the extent that the counsel's
deficient performance undermines the voluntary and intelligent
nature of the defendant's decision to plead guilty." United
States v. Arteca, supra, 411 F.3d at 320.

    In evaluating whether a guilty plea was entered
knowingly and voluntarily, it is important to note that
"statements at a plea allocution carry a strong presumption of

22

veracity" and a "defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [a] guilty plea." United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997), citing Blackledge v. Allison, 431 U.S. 63, 74 (1977) and United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997); accord United States v. Gonzalez, 647 F.3d 41, 56-57 (2d Cir. 2011); United States v. Doe, supra, 537 F.3d at 211.

### 2. The Record Does Not Demonstrate That Petitioner's Plea Was Involuntary

Petitioner's second ground for relief is that his guilty plea was not knowing and voluntary because it "was unlawfully induced -- not made voluntarily -- not with understanding of the nature of the charges and the consequences of the plea [sic]" (Pet. at 8).  It is clear, however, from petitioner's sworn statements at his plea allocution that his guilty plea was both knowing and voluntary.  Petitioner had adequate notice of the charges against him as demonstrated by his confirmation that he had discussed the charges against him with his attorney and that he understood these charges and admitted their essential elements (Ex. B to Resp't Mem. at 5-6, 10-16). He also indicated that he understood the rights he would have had

at trial and the consequences of entering a guilty plea (Ex. B to
Resp't Mem. at 6-9).  Similarly, the record reveals that his plea
was voluntary because he confirmed that no threats and no
promises had been made to influence him to plead guilty (Ex. B to
Resp't Mem. at 9).  As noted above, petitioner's bare and
conclusory assertions to the contrary in the instant petition are
legally insufficient to overcome the presumptive veracity of his
sworn statements at the plea allocution.  Therefore, there is no
basis to find that his plea was not voluntary and knowing.

> 3.  Petitioner Received
>     Effective Assistance of Counsel
>     In Connection With His Guilty Plea

        To the extent petitioner is arguing that his guilty
plea was not voluntary and knowing because he received
ineffective assistance of counsel, this claim is also without
merit.  Mr. Fallick, who represented petitioner at the proffer
sessions and the plea allocution, provided effective assistance.
As an initial matter, petitioner stated during his plea
allocution that he was satisfied with Mr. Fallick's
representation (Ex. B to Resp't Mem. at 5).  Petitioner's belated
and conclusory assertions otherwise are inadequate grounds upon
which to conclude that petitioner received ineffective assistance
of counsel.  See United States v. Doe, supra, 537 F.3d at 211;

24

United States v. Torres, supra, 129 F.3d at 170 .  Moreover, in
view of the fact that petitioner faced two maximum sentences of
life imprisonment if convicted at trial, Mr. Fallick's efforts to
avoid that result by advising petitioner to enter the Cooperation
Agreement in exchange for a 5K1.1 motion were objectively
reasonable.  See Ramzan v. United States, 11 Civ. 1191 (NRB), 06
Cr. 456, 2012 WL 3188847 at *6 (S.D.N.Y. Aug. 6, 2012) (Buchwald,
D.J.) (advice that defendant should cooperate with the government
to receive a reduced sentence "is remarkably common and cannot
possibly be considered to fall outside of the range of reasonable
representation"); Cortez v. United States, 09 CV 7220 (DAB), 05
CR 55 (DAB), 2011 WL 666245 at *5-6 (S.D.N.Y. Feb. 10, 2011)
(Batts, D.J.) (counsel's "advice was neither unreasonable nor
deficient" where "[b]y pleading guilty, Petitioner was able to
avoid the 20-year prison sentence and to argue for the statutory
safe valve"); Lindsey v. United States, 04 Civ. 7985, 2007 WL
4562927 at *3 (S.D.N.Y. Dec. 26, 2007) (Wood, D.J.) ("[F]ar from
being ineffective, counsel acted appropriately in negotiating a
plea agreement, which afforded Petitioner many tangible
benefits.").  Petitioner's contention that Mr. Fallick told him
to tell the government everything and that "counsel was coercing
me to explain in full detail" (see Pet. at 8) provides no support
for his claim.  Rather, this was the correct advice to give to a

defendant who was seeking to cooperate with the government; any other course would have created a risk that the government would refuse to enter into a cooperation agreement with petitioner.

Finally, petitioner cannot show that he would have been better off by going to trial as opposed to pleading guilty and cannot, therefore, demonstrate any prejudice.  Petitioner's best strategy to avoid a life imprisonment sentence -- which he did avoid -- was to enter the Cooperation Agreement, which included the promise of a 5K1.1 Motion.  The fact that such a motion was never made was not a result of Mr. Fallick's representation, but rather of petitioner's own conduct in violating the terms of the Cooperation Agreement.  Having failed to show that Mr. Fallick's representation was deficient or that any prejudice resulted from it, petitioner's claim that his guilty plea was not voluntary and knowing because of ineffective assistance of counsel is without merit.

> 4.  Petitioner's Plea Was Not the
>     Result of Coerced Confessions

To the extent that petitioner's third claim -- that his conviction was the result of coerced confessions -- challenges the voluntariness and knowingness of his plea, it provides no basis for relief.  Petitioner points to the fact that his

counsel, Mr. Fallick, told him to "explain in full detail, events, crimes, drugs [sic]" during the proffer sessions (Pet. at 8).  There is, however, nothing coercive about this advice.  To the contrary, it is entirely consistent with the purpose of the proffer sessions, which was for petitioner "to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions" (Ex. J to Resp't Mem. at 1). Petitioner cannot now complain that his plea was obtained by "coerced confessions" when he provided that information pursuant to a proffer agreement into which he willingly entered.  Moreover he was represented by Mr. Fallick at all the proffer sessions and, as explained above, Mr. Fallick's counsel was neither objectively unreasonable nor prejudicial.  Indeed, at his plea allocution and under oath, petitioner specifically stated that no threats had been made to him to influence him to plead guilty (Ex. B to Resp't Mem. at 9).  Accordingly, petitioner's claim that his conviction was the product of coerced confessions is without merit and does not vitiate Judge Francis's and Judge Rakoff's findings that the plea was knowing and voluntary.

D.  Entrapment Claim

1.  Applicable Law

"'A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea.'" Parisi v. United States, supra, 529 F.3d at 138, quoting United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996); see also United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless."); Cortez v. United States, supra, 2011 WL 666245 at *6 (a petitioner's guilty plea waived the right to challenge pre-plea issues that were unrelated to the advice to enter the plea).  In other words, a counseled and voluntary plea forecloses a petitioner from collaterally attacking the conviction.  United States v. Broce, 488 U.S. 563, 569 (1989).

28

                    2.   Petitioner's Entrapment
                         Claim Is Waived by His Guilty Plea

        Petitioner's claim that his conviction was the result
of entrapment has been waived by his guilty plea.  As explained
above, petitioner's plea was knowing and voluntary and,
therefore, petitioner is foreclosed from collaterally attacking
the charges underlying that plea, including any objection that
his conviction was the result of entrapment.  In other words
because the process through which petitioner entered his plea was
valid, issues that are unrelated to entry of the plea itself have
been waived.  Therefore, petitioner's entrapment claim provides
no basis for habeas relief.

    E.   Procedural Bar

        1.   Applicable Law

        A petition under Section 2255 "cannot be used to
'relitigate questions which were raised and considered on direct
appeal.'"  United States v. Pitcher, 559 F.3d 120, 123 (2d Cir.
2009) (per curiam), quoting United States v. Sanin, 252 F.3d 79,
83 (2d Cir. 2001); see also Yick Man Mui v. United States, supra,
614 F.3d at 53 (a Section 2255 motion cannot be used to
relitigate "issues impliedly resolved by the appellate court's

                              29

mandate."); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.").  A habeas petitioner is also procedurally barred from bringing claims that could have been raised on direct appeal absent a showing of cause and prejudice, or actual innocence. United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011), citing Yick Man Mui v. United States, supra, 614 F.3d at 53-54 and Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007); see also Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 508 (S.D.N.Y. 2005) (Rakoff, D.J.) (adopting Report & Recommendation of Gorenstein, M.J.).

2.  Petitioner's Remaining
    Claims Are Procedurally Barred

Petitioner's two remaining claims -- inaccuracies in his PSR and miscellaneous issues concerning his sentencing, are procedurally barred because the issues they raise were already, or could have been, litigated and decided in petitioner's two direct appeals.

Petitioner claims that the PSR contained inaccurate information, including the overstatement of his offense conduct and drug quantities, uncharged crimes and inapplicable enhancements.  He is, however, procedurally barred from bringing

30

this claim based on his sentencing in this petition because he directly appealed both his sentencing and resentencing.  He cannot now use his habeas petition to relitigate what he has already appealed.  In addition, to the extent that he did not raise these specific issues on his direct appeals, he is still procedurally barred from doing so here because he could and should have raised them on appeal.

Petitioner also points to alleged problems with his sentencing, which he articulates as "deceiving the defendant, to enforce the plea agreement, acceptance of responsibility, drug quantity amounts and relevant conduct [sic]" (Pet. at 6).  Although the exact nature of these claims is not clear, they appear to relate to petitioner's Guidelines calculation.  As explained above, petitioner is procedurally barred from asserting these claims because these issues were already, or could have been, raised on his two direct appeals.  To the extent that petitioner's reference to the plea agreement is a claim that the Cooperation Agreement should have been enforced, this issue should and could have been raised on petitioner's first direct appeal, and is also procedurally barred from habeas review.

Next, apparently in support of these last two claims, petitioner contends that there is a basis for relief because no drugs were recovered at the time of his arrest (Pet. at 6).  Even

31

if this argument were not procedurally barred, because petitioner was convicted of <u>conspiring</u> to violate the federal narcotics law, the absence of actual narcotics is immaterial.

Accordingly, petitioner's claims concerning the PSR and sentencing are procedurally barred, absent a showing of cause and prejudice, or actual innocence.  See <u>Rosario-Dominguez v. United States</u>, <u>supra</u>, 353 F. Supp. 2d at 508-09.  Petitioner, however, has not demonstrated that there was any cause for his failure to raise these claims, to the extent that he did not raise them, or that he has suffered any prejudice.  Similarly, there is no showing of actual innocence.  Thus, his fifth and sixth claims provide no basis for relief.

IV.  <u>Conclusion</u>

For the foregoing reasons, I respectfully recommend that petitioner's petition to vacate, set aside or correct his sentence be denied in its entirety.

V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See <u>also</u> Fed.R.Civ.P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Jed S. Rakoff, United States District Judge, 500 Pearl Street,
Room 1340, New York, New York 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing
objections must be directed to Judge Rakoff.   FAILURE TO OBJECT
WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND **WILL** PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140,
155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d
Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,
1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.
1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.
1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         October 23, 2012

                                   Respectfully submitted,


                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies Mailed To:

Mr. Carl Hall
Reg. No. 44729-054
USP Florence - High
United States Penitentiary
P.O. Box 7000
Florence, Colorado  81226

Michael Ferrara, Esq.
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York  10007